**HALPER SADEH LLP**
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MELISSA HAMLIN,<br><br>    Plaintiff,<br><br>v.<br><br>BUILDERS FIRSTSOURCE, INC., PAUL S. LEVY, DANIEL AGROSKIN, DAVID A. BARR, CLEVELAND A. CHRISTOPHE, CHAD CROW, JANICE DAVIS, WILLIAM BRADLEY HAYES, BRETT N. MILGRIM, FLOYD F. SHERMAN, and CRAIG STEINKE,<br><br>    Defendants. | Case No:<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Melissa Hamlin ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.      This is an action against Builders FirstSource, Inc. ("Builders" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

1

§§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger of Builders and BMC Stock Holdings, Inc. ("BMC") (the "Proposed Transaction").

2. In connection with the Proposed Transaction, Boston Merger Sub I Inc. ("Merger Sub"), a wholly owned subsidiary of Builders, will merge with and into BMC, with BMC surviving the merger as a wholly owned subsidiary of Builders. Upon completion of the merger, each issued and outstanding share of BMC common stock will be converted into the right to receive 1.3125 shares of Builders common stock (the "Exchange Ratio").

3. Upon closing of the Proposed Transaction, Builders shareholders will hold, in the aggregate, approximately 57% of the issued and outstanding shares of Builders common stock, while BMC shareholders will hold, in the aggregate, approximately 43% of the issued and outstanding shares of Builders common stock on a fully diluted basis.

4. On October 8, 2020, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

5. The Registration Statement, which recommends that Builders shareholders vote in favor of, among other things, the issuance of Builders common stock in connection with the Proposed Transaction (the "Stock Issuance"), omits and/or misrepresents material information concerning: (1) Builders' and BMC's financial projections; (2) the financial analyses performed by Builders' financial advisor, Rothschild & Co US Inc. ("Rothschild"), in connection with its fairness opinion; and (3) potential conflicts of interest involving Builders' financial advisors, Rothschild and Morgan Stanley & Co. LLC ("Morgan Stanley").

6. These material misrepresentations and omissions prevent the Company's

shareholders from making a fully informed voting decision on the Stock Issuance proposal. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the anticipated shareholder vote on the Stock Issuance.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in this District.

10. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

11. Plaintiff is, and has been at all relevant times hereto, an owner of Builders common stock.

12. Defendant Builders manufactures and supplies building materials, manufactured components, and construction services to professional homebuilders, sub-contractors, remodelers,

and consumers in the United States. The Company serves the New Jersey market in several locations throughout the State.[1] The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "BLDR."

13. Defendant Paul S. Levy ("Levy") is Chairman of the Board of the Company.

14. Defendant Daniel Agroskin ("Agroskin") is a director of the Company.

15. Defendant David A. Barr ("Barr") is a director of the Company.

16. Defendant Cleveland A. Christophe ("Christophe") is a director of the Company.

17. Defendant Chad Crow ("Crow") is Chief Executive Officer and a director of the Company.

18. Defendant Janice Davis ("Davis") is a director of the Company.

19. Defendant William Bradley Hayes ("Hayes") is a director of the Company.

20. Defendant Brett N. Milgrim ("Milgrim") is a director of the Company.

21. Defendant Floyd F. Sherman ("Sherman") is a director of the Company.

22. Defendant Craig Steinke ("Steinke") is a director of the Company.

23. Defendants Levy, Agroskin, Barr, Christophe, Crow, Davis, Hayes, Milgrim, Sherman, and Steinke are collectively referred to herein as the "Individual Defendants."

24. Defendants Builders and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

25. On August 27, 2020, Builders and BMC announced that they had entered into a definitive merger agreement under which Builders and BMC will combine in an all-stock merger

---

[1] *See* Builders, *Locations,* https://www.bldr.com/locations (last visited Nov. 4, 2020).

transaction. Under the terms of the agreement, BMC shareholders will receive a fixed exchange ratio of 1.3125 shares of Builders common stock for each share of BMC common stock. The press release states, in pertinent part:

### Builders FirstSource to Combine with BMC Stock Holdings, Creating the Nation's Premier Supplier of Building Materials and Services

August 27, 2020 06:30 ET | **Source:** Builders FirstSource, Inc.

*Combined Company Will Deliver a Full Suite of Products, Services and Solutions Nationally with Over $11 Billion in Annual Sales*

*Expands Geographic Reach and Value-added Offerings, Accelerating Customer-centric Growth Strategy*

*Anticipates Annual Cost Synergies of $130 Million to $150 Million by Year Three*
*Accretive to Adjusted EPS in First Year Post-Closing*

*Compelling Financial Profile and Robust Free Cash Flow Generation to Invest in Growth and Additional Value Creation*

DALLAS and RALEIGH, N.C., Aug. 27, 2020 (GLOBE NEWSWIRE) -- Builders FirstSource, Inc. (Nasdaq: BLDR) ("Builders FirstSource") and BMC Stock Holdings, Inc. (NASDAQ: BMCH) ("BMC"), today announced that they have entered into a definitive merger agreement under which Builders FirstSource and BMC will combine in an all-stock merger transaction to create the nation's premier supplier of building materials and services. The companies will host a joint conference call today at 7:30 a.m. Central Time (8:30 a.m. Eastern Time) to discuss the transaction.

Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of both companies, BMC shareholders will receive a fixed exchange ratio of 1.3125 shares of Builders FirstSource common stock for each share of BMC common stock. Upon completion of the merger, existing Builders FirstSource shareholders will own approximately 57% and existing BMC shareholders will own approximately 43% of the combined company on a fully diluted basis. The merger is expected to be tax free for U.S. federal income tax purposes.

After a 90-day transition period following the completion of the merger, Chad Crow, current Chief Executive Officer of Builders FirstSource, will retire as previously announced and will be succeeded as Chief Executive Officer of the combined company by Dave Flitman, current Chief Executive Officer of BMC.

Thereafter, Mr. Crow will continue to be available on a consulting basis to the combined company for a period of time to support the integration execution and to ensure an orderly transition.

\*       \*       \*

**Leadership and Governance**

Following the transaction closing, the combined company will operate under the name Builders FirstSource, Inc. and will be headquartered in Dallas, TX, while maintaining key functional corporate centers of excellence in both Raleigh, NC and Denver, CO.

In addition to the succession of Dave Flitman as Chief Executive Officer of the combined company, the management team will be comprised of leaders from both organizations. Peter Jackson, Chief Financial Officer of Builders FirstSource, will serve as Chief Financial Officer of the combined company. The transition and integration of the combined company will be led by Dave Rush, Chief Operating Officer of Builders FirstSource's East Region, who led the integration team for Builders FirstSource in its ProBuild acquisition, and Jim Major, Chief Financial Officer of BMC.

Upon closing, the combined company's Board of Directors will have 12 directors, consisting of seven members from the Builders FirstSource Board of Directors and five members from the BMC Board of Directors. Paul S. Levy, Co-Founder and current Chairman of the Board of Builders FirstSource, will serve as Chairman of the Board of Directors of the combined company.

Mr. Levy commented, "We are excited to join forces with BMC. We started Builders FirstSource in 1998 with an ambitious vision, and the combination of these two exceptional companies represents another significant milestone, further enhancing value for all stakeholders. Our ability to continue to build our world-class organization exists because of the extraordinary commitment of our many teammates, led through many incredibly dynamic periods by Chad Crow and our prior CEO, Floyd Sherman, and we look forward to continuing that strong legacy of leadership under Dave Flitman. I have full confidence in the unified team to accelerate the success of this larger platform and continue building upon our powerful momentum into 2021 and beyond."

**Timeline and Approvals**

The transaction is expected to close in late 2020 or early 2021, subject to, among other things, the expiration or termination of the applicable waiting periods under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, as well as other customary closing conditions. The transaction requires the approval of shareholders of both Builders FirstSource and BMC.

**Advisors**

Rothschild & Co and Morgan Stanley & Co. LLC are serving as financial advisors to Builders FirstSource and Skadden, Arps, Slate, Meagher & Flom LLP is serving as its legal advisor. Moelis & Company is serving as financial advisor to BMC and Simpson Thacher & Bartlett LLP is serving as its legal advisor.

*   *   *

**About Builders FirstSource**

Headquartered in Dallas, Texas, Builders FirstSource is the largest U.S. supplier of building products, prefabricated components, and value-added services to the professional market segment for new residential construction and repair and remodeling. We provide customers an integrated homebuilding solution, offering manufacturing, supply, delivery and installation of a full range of structural and related building products. We operate in 40 states with approximately 400 locations and have a market presence in 77 of the top 100 Metropolitan Statistical Areas, providing geographic diversity and balanced end market exposure. We service customers from strategically located distribution and manufacturing facilities (certain of which are co-located) that produce value-added products such as roof and floor trusses, wall panels, stairs, vinyl windows, custom millwork and pre-hung doors. Builders FirstSource also distributes dimensional lumber and lumber sheet goods, millwork, windows, interior and exterior doors, and other building products. For more information about Builders FirstSource, visit the Company's website at **www.bldr.com**.

**About BMC Stock Holdings**

With $3.6 billion in 2019 net sales, BMC is one of the nation's leading providers of diversified building materials and solutions to new construction builders and professional remodelers in the U.S. Headquartered in Raleigh, North Carolina, the Company's comprehensive portfolio of products and services spans building materials, including millwork and structural component manufacturing capabilities, consultative showrooms and design centers, value-added installation management and an innovative eBusiness platform. BMC serves 45 metropolitan areas across 18 states, principally in the South and West regions.

B. **The Registration Statement Contains Materially False and Misleading Statements and Omissions**

26.     The Registration Statement omits and/or misrepresents material information concerning: (1) Builders' and BMC's financial projections; (2) the financial analyses performed by Builders' financial advisor, Rothschild, in connection with its fairness opinion; and (3) potential

7

conflicts of interest involving Builders' financial advisors.

27. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Recommendation of the BFS Board of Directors; Builders FirstSource's Reasons for the Merger; (ii) Opinion of Builders FirstSource's Financial Advisor; (iii) Background of the Merger; and (iv) Certain Unaudited Prospective Financial Information.

28. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Stock Issuance, the Company's shareholders will be forced to make a voting decision on the Stock Issuance without full disclosure of all material information. In the event Defendants fail to disclose the following information before the shareholder vote, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Builders' and BMC's Financial Projections

29. The Registration Statement omits material information concerning Builders' and BMC's financial projections.

30. The Registration Statement provides the following financial projections prepared by the respective managements of Builders and BMC, and certain projections derived therefrom: (i) the "BFS stand-alone projections"; (ii) the "BFS projections for BMC"; (iii) the "pro forma BFS projections"; (iv) the "BMC stand-alone projections"; and (v) the "BMC projections for BFS" (collectively, the "Projections").

31. The Registration Statement, however, fails to disclose the following concerning the Projections: (1) all line items used to calculate (i) Net Sales, (ii) Revenue, (iii) Adjusted EBITDA and (iv) unlevered free cash flow; and (2) Builders' and BMC's net income projections and all underlying line items thereto.

32.     The disclosure of the aforementioned projected financial information is material because it would provide Builders shareholders with a basis to project the future financial performance of Builders and the combined company and would allow shareholders to better understand the financial analyses performed by Builders' financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Builders and its financial advisor, Builders shareholders are unable to determine how much weight, if any, to place on the Company's advisor's fairness opinion in determining whether to vote for or against the Stock Issuance.

33.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2.    Material Omissions Concerning Rothschild's Financial Analyses**

34.     In connection with the Proposed Transaction, the Registration Statement omits material information concerning Rothschild's financial analyses.

35.     With respect to Rothchild's "*Selected Public Companies Trading Analysis*" and "*Selected Precedent Transactions Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of each company and transaction utilized by Rothschild in its analyses.

36.     The Registration Statement fails to disclose the following concerning Rothchild's "*Discounted Cash Flow Analysis*" and "*Pro Forma Combined Company Discounted Cash Flow Analysis*": (1) all line items underlying the projected after-tax, unlevered free cash flows of Builders and BMC, respectively, and the pro forma combined company; (2) the individual inputs and assumptions underlying the (i) range of perpetuity growth rates of 2.00% to 2.50%, (ii) discount rates ranging from 9.0% to 10.0%, from 8.6% to 9.6%, and from 8.5% to 9.5%, and (iii)

9

terminal multiples of 7.75x to 8.75x; and (3) the terminal values of Builders and BMC.

37. The valuation methods, underlying assumptions, and key inputs used by Rothschild in rendering its purported fairness opinion must be fairly disclosed to Builders shareholders. The description of Rothschild's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Builders shareholders are unable to fully understand Rothschild's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Stock Issuance. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Builders' Financial Advisors

38. The Registration Statement omits material information concerning potential conflicts of interest involving Builders' financial advisors, Rothschild and Morgan Stanley.

39. The Registration Statement provides that Rothschild provided certain services to Builders during the past two years for which it received fees, stating in pertinent part:

> Rothschild & Co and its affiliates have provided, and are currently providing, ***financial advisory services to Builders FirstSource [(without reference to Builders' affiliates)]***, for which Rothschild & Co and its affiliates have received and may in the future receive fees, including advising Builders FirstSource on potential acquisitions, divestitures and other strategic advisory matters. In addition, Rothschild & Co and its affiliates may in the future provide investment banking and other financial services to Builders FirstSource, BMC and their respective affiliates in the ordinary course of business of Rothschild & Co and its affiliates from time to time and may receive fees for the rendering of such services. In the past two years, Rothschild & Co received approximately $550,000 in fees from ***Builders FirstSource and its affiliates for investment banking services*** in matters unrelated to the merger.
>
> *See* Registration Statement at 118 (emphasis added).

40. The Registration Statement, however, fails to disclose (1) the timing and nature of

all financial advisory services that Rothschild provided to Builders and *its affiliates* within the past two years; and (2) the amount of compensation received by Rothschild for providing such services, as only fees for "investment banking services" has purportedly been disclosed; and (3) whether and to what extent Rothschild and its affiliates have provided services to BMC and/or its affiliates, including the timing and nature of the services provided and the amount of compensation received for such services, in the two years prior to the date of Rothschild's fairness opinion.[2]

41.     The Registration Statement also provides that Builders retained Morgan Stanley as a financial advisor in 2020 in connection with the Proposed Transaction but fails to disclose: (1) the amount of compensation Morgan Stanley has received or will receive in connection with their retention by the Company; (2) the amount of compensation Morgan Stanley received or expects to receive that is contingent upon consummation of the Proposed Transaction; and (3) whether Morgan Stanley performed past services for any parties to the Proposed Transaction and/or their affiliates, including the timing and nature of those services and the amount of compensation received for providing such services.

42.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

43.     The above-referenced omitted information, if disclosed, would significantly alter

---

[2] The omission of this information as relating to BMC and its affiliates is even more glaring in light of the Registration Statement's disclosure that, on "August 19, 2020, Rothschild & Co provided Builders FirstSource with a letter disclosing information *regarding its relationships with . . . BMC* and related matters in connection with the proposed transaction between Builders FirstSource and BMC." *See* Registration Statement at 97 (emphasis added).

the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

46. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction and/or Stock Issuance. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

47. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Stock Issuance.

48. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

49. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

50. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the

statements or to cause the statements to be corrected. The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction and/or Stock Issuance. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

54. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction and/or Stock Issuance. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Stock Issuance, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

  B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

  C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

  D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

  E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 4, 2020       Respectfully submitted,

                **HALPER SADEH LLP**

                /s/Zachary Halper
                Zachary Halper, Esq.
                186 Darwin Lane
                North Brunswick, NJ 08902
                Telephone: (212) 763-0060
                Facsimile: (646) 776-2600
                Email: zhalper@halpersadeh.com

                Daniel Sadeh, Esq. (*pro hac vice* application forthcoming)
                667 Madison Avenue, 5th Floor
                New York, NY 10065
                Telephone: (212) 763-0060
                Facsimile: (646) 776-2600

                *Counsel for Plaintiff*